## John O. Guion et ux. *v.* P. W. Doherty.

1. Pleading—Practice.—Accord executed, is satisfaction; but accord executory, is only substituting one cause of action in room of another. C. J. Eyre. Hence, a plea to an action of *assumpsit* that the plaintiff had agreed to accept a depreciated currency in satisfaction of the claim sued on, without averring actual payment, will be bad on demurrer.

2. Same —Tender.—Nor is a like plea, with an averment that defendant had the particular currency in readiness, and made presentation for payment, sufficient as a plea of tender. If the thing tendered be capable of production in court, as specie, bank notes, etc., it must accompany the plea, and show that the party is *semper paratus* to pay when called on.

3. Same—Coverture.—The plea of coverture is no bar to an action for the price of plantation and family supplies and necessaries, sold and delivered to a married woman, or to her husband with her consent, for the use and benefit of her separate estate.

4. Same—Demurrer.—If there be a demurrer to an entire declaration, and any one of several counts in such declaration be good, the demurrer shall be overruled.

5. Same—Verdict of a Jury.—In reviewing a verdict of a jury, the supreme court will not be guided by its own concurrence or want of concurrence with the jury, because the jury were in more favorable circumstances for eliciting the truth of facts than the supreme court. But the test is, was there sufficient evidence fairly to support the verdict?

6. Open Accounts—Promissory Notes—Merger.—G. gave his own promissory note for the amount of an account against his wife for goods sold on credit, and for which her separate estate was liable under the married woman's law of 1857. *Held :* That an action could still be maintained on the account against the wife. The acceptance of a security of equal dignity is, of itself, no extinguishment of an antecedent debt. *Aliter*, if there be an agreement of the creditor to accept it absolutely as payment, and to incur the risk of its being paid.

Error to the circuit court of Yazoo county.    Campbell, J.

The plaintiff in error assigned the following errors :

1st. The court erred in sustaining defendant's demurrer to plaintiff's second, third, fourth, and fifth pleas.

2d. The court erred in allowing defendant to join issue on fourth and fifth pleas of plaintiffs, after and pending the judgment of the court sustaining defendant's demurrer thereto.

·3d. The court erred in not extending defendant's demurrer to plaintiff's second, third, fourth, and fifth pleas, back to defendant's declaration, the said suit being upon accounts closed by the notes of John O. Guion, accepted and retained by defendant, and not upon the note itself, nor the note

being treated as the deed of Mrs. Guion, nor her liability being charged on said note as her act by herself or agent.

4th. The court erred in not extending demurrer of defendant to plaintiff's second, third, fourth, and fifth pleas, back to defendant's declaration, because the accounts sued on show they were credits given to John O. Guion; were closed by the notes of John O. Guion, taken and accepted, and the note is not declared on as the note of Mrs. Guion, made by herself or her alleged agent, nor is it declared upon at all, and because said declaration shows no cause of action against Mary Guion, but against John O. Guion only, he having closed the accounts by his note, and because there is a misjoinder of counts.

5th. The court erred in not extending said demurrer back to the declaration, because it contains a misjoinder of causes of action and parties, to-wit: a note on John O. Guion, individually, and not on his wife or averred to be on her act by him, nor in any way purporting to be her liability, and accounts charged to be the liability of Mrs. Guion.

6th. The court erred in allowing the note of John O. Guion to be read to the jury against plaintiff's objection, because the suit was against, and to charge Mary Guion, and not John O. Guion, whose individual note it was, and because the note showed no liability against Mrs. Guion, but only against John O. Guion, not sued, only formally with his wife, nor was it competent to show that John O. Guion executed the note in any other capacity than it purported, and it was calculated to mislead the jury and prejudice Mrs. Guion, and was illegal and improper as evidence in the cause.

7th. The court erred in overruling plaintiff's objection to the question and evidence of defendant, as to what was the consideration of the said note of John O. Guion, and in what capacity John O. Guion made the same.

8th. The court erred in overruling the objection of plaintiffs to the evidence of defendant, and admitting such evidence in relation to the account of 1863 and 1865.

9th. The court erred in overruling the plaintiff's objection

to the evidence of defendant, and allowing the same to go to the jury touching the custom of merchants and his custom, and his evidence generally.

10th. The court erred in overruling plaintifl's objection to the evidence of E. B. Rundle, and admitting the same touching the custom of merchants.

11th. The court erred in overruling plaintiff's objection to, and allowing the deed to be read to the jury, from Henry Vaughn to Mary Guion.

12th. The court erred in overruling the objection of plaintiffs to, and allowing the reading to the jury, of the tax assessment roll for 1865, the same being illegal and improper evidence, and not proved to be the assessment roll by anything in evidence or proof made.

13th. The court erred in granting the instructions asked for the defendant.

14th. The court erred in refusing the third, seventh, eighth, ninth, tenth, fifteenth, sixteenth, seventeenth, eighteenth ninteenth, and twenty-second instructions for plaintiffs.

15th. The court erred in refusing to grant the motion of plaintiffs for a new trial for the reasons therein stated.

16th. The judgment is entered jointly and generally against defendants, and to be so levied or executed, when it should be, to be levied of the estate of Mary Guion only, if of any one.

*Hudson & Nye,* for the plaintiffs in error.

This is a case of great importance to the real plaintiff in error, and to a large class of the community, involving the last means of the wife, her home and her homestead. This court held in the case of Hardin v. Pelan, 41 Miss., 112; ib., 119; ib., 520, that the note of a married woman is *prima facie void,* and she cannot be held liable in any case, except where by law she was permitted to contract, and in pursuance of law did contract. 2 Bright Hus. and Wife, 41, § 18. In this case the wife was an entire stranger. There was no act of Mrs. Guion no knowledge or information; no consent or

authority on her part to be bound, or the existence of any liability by herself or her husband; and in the whole dealings of fifteen years, beginning before she had an estate, and embracing daily, weekly, monthly, and annual transactions of small and large amounts, yet until the bringing of this suit, Mrs. Guion's name was never known, or even mentioned as connected with these transactions.

By the pleadings and evidence, both the defendants in error, profess to have known Mrs. Guion, and to have given her the credit *ab initio*, by charging to John O. Guion, and dealing with, and in his name alone, not as agent, but by their books, etc., as principal. They can impart nothing more, than that he was principal and so credited, and that he alone was credited and liable. 11 Serg. and Rawle, 375; 13 Johns., 58; 15 East., 62; Strange., 816; 1 Term R., 108.

It is true that the execution of a note for an account, is not a payment of the debt, ordinarily, unless so accepted by the creditor; but the execution of a note by Guion to close an account against him, is a merger of the account by the note, and suit can be brought only on the note. 1 How., 139, disposes of this question. Also, 6 How., 46–50. There is no uncertainty or ambiguity in the accounts or the note, as to the nature of the indebtedness, or as to the party credited or charged, and hence parol testimony was inadmissible to contradict the note and account; or to show that Guion acted as agent or attempted to do so. 1 Chit. Pl., 26, 27. Stackpole v. Arnold, 11 Mass., 29; Alfridson v. Ladd, 12 Mass., 137; 10 Wend., 87; 10 Met., 160; 6 Greenl. R., 222; 2 Kent Com., 8th ed., 820, note 2; 5 East, 184; 6 Mass., 58; 2 Wheat., 56; 5 Mass., 595; 12 Johns., 304; 7 Cowan, 453; 2 Hill, S. C R., 224; 2 Kent Com., 822, note *c:* "nor can he afterwards have recourse on the principal." 2 Kent Com., 823, and 824, note *c*; 15 East., 62; 4 Taunton, 574; and if credit is given to the agent, the principal is not bound. 6 How., 328; Am. Lead. Ca., 4th ed., Hare & Wallace's notes, 628, 629, 630 and notes. Also, 1 Chit. Pl., 26 and 27; 3 Camp., 317; 15 East, 63–66; 12 Vesey, p. 352; Paley,

426; Peake, C. N. P., 120; 1 Term R., 181; 7 Term R., 359; Burrows, 1921; 11 Serg. & Rawle, 375; 13 Johns., 58; Camp., 739; 7 Term R., 312; Strange, 816.

The question is not whether Guion was or was not the agent of his wife, or whether as husband he could have bound her, had he intended to do so. The question is, did John O. Guion act or intend to act upon the credit of his wife, and to bind her? It is clear that he did not. See 2 Greenl. Ev., 5th ed., § 519, 520 and 521; 1 How. Miss., 139. The account was merged in the note of John O. Guion, and the action could be maintained only on the note. 1 How., 2 Greenl. Ev., § 519; 6 How., 46–50. See also, 2 Greel. Ev. (7th ed. and notes), §§ 117, 118, 119, and 120; 11 Wheaton, 51; 4 Black. Com., 160. By the provision of our statute, Rev. Code, art. 25, p. 336, the husband and wife, or either of them, can contract for supplies for the plantation of the wife, to be satisfied out of her separate estate. In this case no part of the debt was contracted by the husband and wife, but by the husband. We deny in the first place that any considerable portion of the account was for supplies for the plantation of the wife, and insist that the burden of proof is on the plaintiff below to establish that articles were for the plantation of the wife. This has not been done in any particular.

Defendant in error insists that the husband may alone charge and make liable, at his own will and pleasure, the wife and her estate. Such a doctrine is directly opposed by the spirit and policy of the laws enacted by the legislature for the protection and regulation of the rights of married women, in relation to their separate estate. This view of the law does not conform to the adjudications of our courts. Treadwell v. Herndon, 41 Miss., 38; 23 Miss., 280.

The intention on the part of Mary Guion, to create the liability, must have existed at the time of the sale of the goods, and form part of the *res gestœ*, in order to bind her. 20 Johns., 28; 1 Amer. Leading Ca., Hare & Wallace, notes, 728, 629, 630. The husband, John O. Guion, could not be heard to say it was not his debt, but that of his wife, and

that he was only agent, and as such acted for her. 3 Mass., 1; Norris' Peake, 302; 5 Binn., 33; 6 Mass., 58; 9 Johns., 217; 5 Wheat., 277; 7 Johns., 321; 4 Dallas, 226; 1 Wash., 335. Nor was the dealing and note without sufficient consideration in law. 2 Mumf., 413; 33 How. & Mumf., 319; 1 Cranch, 443; 4 Wash. C. C. R., 297; also, 1 Chit. Pl., 26, 27; 3 Camp., 317; 15 East, 63–66; 12 Vesey, jr., 352; Paley, 246; Peake C. N. P., 120; 1 Term R., 181; 7 Term R., 312–359; Burrows, 1921; 11 Serg. & Rawle, 375; 13 Johns., 58; Cowper, 629; Strange, 816; 2 Bright Hus. & Wife, 301, § 22. The husband is no where authorized to give his own or her note for supplies, so as to bind her thereby; and had she given her own note, it would have been *prima facie* void, if not absolutely void. 41 Miss., 112. And by giving his own, he did not attempt to bind her, nor could he thereby have done so. Ib., 112.

It was the dealing of John O. Guion alone, whose duty it was to support his wife and children, he being entitled to his own earnings, as well as those of his wife and children. 27 Miss., 830; 1 Black. Com., 443; Salk., 118; 1 Sid., 110; 1 Thach., 168. It was error to allow the plaintiff to testify in what capacity John O. Guion gave the note. This is settled in 2 Strange, 955; Cases, tempore Hardw.; 1 S. C. Livermore on Agency, 77; Yelv., 137; Liv. on Agency, 58, 79; Appleton v. Banks, 5 East, 148; Wilkes v. Back, 2 East, 142; Frontin v. Small, 2 Ld. Raym., 1488; 1 Strange, 705; White v. Cuyler, 6 Term R., 176; Macbeth v. Haldman, 1 Term R., 172; Unnin v. Halsey, 1 Term. R., 674; See specially 1 Am. Lead. Ca., Hare & Wallace, notes. pp. 628, 620, and 630; 11 Mass., 27; 8 Metcalf, 444; ib., 456–460; 11 Ala., 1059–1063; 7 Wend., 68; Denio, 402–404; 1 Iowa, 231–233.

It must appear that the person acted as agent, in making the contract; for unless this appear, he will be bound personally; and the other, for whom, and on whose account he acts, will not be bound. 1 Am. Lead. Ca. Hare & Wallace, 628, 629; 11 Mass., 27; 8 Metcalf, 442; ib., 456, 460; 11 Ala., 1059,

1063; 7 Wend., 68; 1 Denio, 402–404; 1 Iowa, 231–233; 12 Robinson La., 428–433; 16 Pick., 347–350; 6 Harris & Johnson, 418–421; 9 Grattan, 79; 11 Mass., 97; 12 N. Hamp., 206–229; 14 Verm., 195; 2 Conn., 680; ib., 23; 1 Richardson, 501; 2 Watt, 83; 14 Meeson & Welley, 459; Pennington, 682; 9 N. Hamp., 263–270; 1 B. Monroe, 201–204; 22 Pick., 158. Also, 20 Wend., 431–434; 3 Hill S. C., 22; 5 Cushing, 211; 8 Metcalf, 456; 11 Mass., 54; 12 ib., 173; 30 Maine, 229–302; 2 Miles, 254; 2 Duer, 260; 2 McCord, 198; 11 Serg. & Rawle, 362–375; 13 Johns., 58–77; 4 Johns. Ch. R., 659–669; 7 Cow., 456–459; 4 Barb. Supreme Court, 275–278; 2 Wash. C. C., 219; 17 Verm, 244; 10 Conn., 5005–10; 7 Wend., 106; 12 ib., 413–417; 4 Monroe, 535, 536; 2 Littell, 168; 5 ib., 196; 4 Randolph, 197; 4 Harrington, 452; 2 Manning & Grainger, 427.

We assign for error, the fourth instruction for the plaintiff below, which is as follows: "It is a question for the jury to determine, from the evidence in this case, what constitute plantation or family supplies." This is palpably erroneous. It arms the jury with the whole law of the case, and virtually instructs them to find against Mrs. Guion. This is a question of law. Morton v. Withers, Skin., 349; 3 R. & C., 631; 5 Dow. & Ry., 532; 7 Car. & Payne, 756; 1 Parsons on Con., p. 244, 245; 11 Verm., 225; 1 Bibb, 519–521; 2 Hump., 27; 3 Day, 17; 12 Metcalf, 559; 6 Watt & Serg., 80; 1 Manning & Graniger, 550; Chit. on Con., 141.

The first instruction for the plaintiff was, likewise, erroneous. The wife had no plantation in 1851, and there is no proof that she had. The second instruction is also error. It charges that the wife is bound in this case, if the supplies were for plantation or family use, whether with or without her consent, and whether the credit was given to her, her estate, or John O. Guion.

The third instruction is not law. It charges that *all contracts* made by the wife—by her husband, with her consent, or by *her agent*, for family supplies, are binding on her or her estate, absolutely.

The fifth instruction is erroneous, for it virtually charges the jury to find against Mrs. Guion, if the credit was given to her, and whether done *with or without her consent*, and whether she knew it or not.

The refusal of the third instruction for Mrs. Guion, was error. Mr. Guion had his own individual *personal* dealings with plaintiff, and for which his wife could not be made liable. Hence the plaintiff was bound to designate her legal and valid dealings and credits from his. The refusal of the 7th, 8th, 9th, 10th, 15th, 16th, 17th, 18th, 19th, and 22d instructions for the plaintiff in error, was likewise erroneous, especially the 8th, 9th, 16th and 19th.

The court erred in sustaining the general demurrer of plaintiff to the 2d, 3d, 4th, and 5th pleas. Rev. Code, 495, 496, title Demurrer. Or else it should have been extended back to the declaration.

*Wilkinson & Bowman,* for defendant in error.

The plaintiffs in error contend that the demurrer to the pleas should have been extended back to the declaration. There are various counts in the declaration. The first is that the defendant, Mary Guion, being indebted for family supplies and necessaries, and for supplies for the plantation and negroes of her, the said Mary, sold and delivered to her and her husband with her consent and at her request; the said husband, with the consent of the wife, in consideration thereof, made the promissory note declared on, and that the said defendants (being the husband and wife) delivered said promissory note. The second count is upon an account stated for plantation and family supplies for the wife. There are two other counts for supplies and necessaries of family, and for supplies for the plantation, the separate property of said Mary, founded on an account filed.

The declaration shows that the note was given for such articles, and the counts on the account were for such articles as the wife may, under our laws, purchase and contract for. Rev. Code, p. 336, art 25. A promissory note for an antece-

dent debt, will not be an extinguishment of the debt, unless, it is taken in payment or satisfaction thereof. And this must clearly appear. Taylor and Myers v. Conner, 41 Miss., 728; Peter v. Beverly, 10 Pet. U. S. Rep., 567; James v. Hackey, 16 Johns., 277; 11 Johns., 513; 5 Johns., 68.

This court has held that if the vendor on a sale to an agent, take the promissory note of the agent for the amount of purchase money, on failure of payment by the agent, the principal will be liable upon the original consideration. Taylor et al. v. Conner, 41 Miss., 728. See also Rev. Code, p. 336, art. 25.

Necessaries and family supplies are such things as are useful to the party's state and condition in life, and of this the jury are the judges. 2 Greenl. Ev., § 365; Peters v. Fleming, 6 Meeson & Welsby, p. 42. The last named case was against an infant for goods sold and delivered, and for money found due on account stated. The action was brought to recover divers gold rings, and a gold ring with engraved crest, watch chain, gold pens, etc. The learned judge left it to the jury to say whether the articles were necessaries, and the ruling was sustained in the court of exchequer. See also Peters v. Fleming, 6 Meeson & W., 45, 46, 47 and 48. If upon the trial of this issue, any part of the articles are proved to be necessaries, the evidence ought to be left to the jury. Maddox v. Mullen, 1 M. & Selwyn, 538. Although a note, given for necessaries, would not bind him as to the amount, he may yet be sued on the instrument, and the plaintiff may recover the just value of the necessaries for which the note is given. Earle v. Reed, 10 Metc., 387; Dubose v. Wheddon, 4 McCord, 221; Stone v. Dennison, 13 Pick, 1; Cradley v. Pratt, 23 Verm., 378.

In this case there is no dispute as to the correctness of the account and its value. It is contended that the note given by Guion, is conclusive, and that the consideration cannot be inquired into. This position cannot be maintained. In cases of this sort the liability of the principal depends on the act done, and not merely upon the form by which it is executed. If the agent is clothed with the proper authority, his acts

bind the principal, although executed in his own name. Story on Agency, § 270 ; Jones v. Littledale, 6 Adolph. & Ellis, 486; Higgins v. Senieur, 8 Meeson & W., p. 840 ; Berbee v. Roberts, 12 Wen., 413 ; Story on Agency, § 269. The fact that the agent contracted in his own name in writing, yet with assent of the principal, and for his benefit, will not exempt the principal from liability, unless exclusive credit is given to the agent. Story on Agency, § 446. See also Allen v. Cort, 6 Hill N. Y. Rep., 318 ; Rogers v. Cort, 6 Hill N. Y. Rep., 332,

Guion himself proves conclusively that the transaction with defendant in error, was on account and upon the credit of his wife ; and that his wife never made any contracts, and never gave any orders for family or plantation supplies ; and that he was acting as the agent of his wife, in contracting the liability. Taylor et al. v. Conner, 41 Miss., 725. It was Mrs. Guion's contract, being done by her consent, within the purview and very letter of the statute. Rev. Code, p. 336, art. 25.

The most usual mode of appointment of an agent arises by implication from recognition of principal or from his acquiesence in the acts of his agent. Story on Agency, § 54; Taylor v. Conner, 41 Miss., 725 ; 2 Kent Com., 4 ed., 613, 616 ; Story on Agency, § 84 to 87. And the nature and extent of the authority of the agent are wholly deduced from his usual employment ; for the master is presumed to authorize and approve the known acts, that are incident to such employment. Story on Agency, § 56; ib., § 104, 105, 106 ; Paley on Agency, 161-167 ; Smith on Mer. Law, 124, 125. As to her separate estate, so far as she is capable of contracting, by our statute, a married woman is a *feme sole*, having the right, privilege and authority to manage it, either by herself or an agent.

It is objected that it was not competent for Doherty & Rundle to testify as to the custom of merchants in Yazoo City. Upon this point see Story on Agency, § 96. This testimony was material, as showing the usages and customs of trade with the wife's agents to whom the credit is given.

Where a bill of exchange or a promissory note is taken in payment, it does not operate as an absolute payment, unless by special agreement, but only as a conditional payment, suspending the right to sue until the maturity thereof. Story on Sales, § 219; Story on Prom. Notes, § 389; Puckford v. Maxwell, 6 Dumford & East's R., 52; Owenson v. Morse, 7 Dumford & East's R., p. 62; Holmes et al. v. De-Camp, 1 Johns. R., 36; Putnam v. Lewis, 8 Johns. R., 389; Benjamin on Sales, pp. 539, 540.

"Giving a note is no payment of the book debt. It could only suspend the right of action during the period allowed for the payment of the note." Putnam v. Lewis, 8 Johns. R., 389; Puckford v. Maxwell, 6 Dumford & East's R., 53.

In the states of Massachusetts and Maine the courts treat a promissory note as a presumption of payment; but such is not the rule in the United States courts, or of the states generally. 2 Parsons on Contracts, p. 136. See also, Curtis v. Hubbard, 9 Metc., 328; Thurston v. Blanchard, 22 Pick., 18.

The taking of the note of a debtor, or third person, for a pre-existing debt, is no payment, unless the creditor parts with it. It only postpones the time of the payment of the old debt until a default in payment of the note. If the note be produced in court it is sufficient. Clarke v. Young & Co., 1 Cranch R., 181; 1 Conn. R., 288–89; Tobey v. Barber, 5 Johns. R., 71; Price v. Price, 1v Meeson & Welsby R., 239; Shelby v. Mandeville, 6 Cranch R., 253–264; Benjamin on Sales, 541–42.

If the agent binds himself, personally, and engages expressly in his own name, and even buys in his own name, but for the benefit of his principal, and without disclosing his name, the principal is also bound, as well as the agent; provided, the goods come to his use. 2 Kent's Com., 631–32; Upton et al. v. Grey, 2 Green Iowa R., 344–374. See also, 2 Kent, note *a*, p. 631; Story on Agency, § 260.

Although the promissory note of a married woman was void and a nullity at common law, yet she may bind herself

in that mode for plantation supplies, family supplies and nec-essaries. Robertson v. Bruner et al., 26 Miss., 244.

Simrall, J.:

Patrick M. Doherty, survivor of the mercantile copartner-ship of P. O'Donnell & Co., sued John O. Guion and Mary, his wife, in *assumpsit*. The object of the suit was to reach the separate property of the wife, and subject it to the indebtment to the plaintiff. The declaration contains several counts:

1st. On a promissory note made by John O. Guion; given, as averred, for sundry necessaries for the benefit of the family, and separate estate of the wife. 2d. On an account stated. 3d. For plantation and family supplies, sold and delivered. 4th. For similar supplies furnished in 1863.

Pleas—1st. *Non assumpsit;* 2d. That the plaintiff agreed to accept Confederate bonds or treasury notes, but now declined to do so; 3d. By Mrs. Guion, coverture; 4th. By Mrs. Guion, that the goods were sold and delivered to John O. Guion on his sole credit, the plaintiff knowing that she had a separate estate, and with no intention to charge the same to her or her estate; 5th. That plaintiff knew that she had separate property, and allowed her husband, as agent, to appropriate its proceeds to the support of the family, etc., and knowing this, gave him, and not her or her property, the credit—she being *feme covert.*

Notice was attached that defendant would offer proof that the goods were sold at Confederate prices, and to be paid for in that currency. To the second, third, fourth and fifth pleas, the plaintiff demurred, which was sustained to all except the fourth and fifth—to which there were replications. The jury found for plaintiff, whereupon a motion was made for a new trial, which was refused.

Sundry errors are complained of, growing out of the rul-ings on the pleadings, the instructions to the jury, and the refusal to grant a new trial. The demurrer to the second plea was properly sustained. The plea sets up an agreement

to take Confederate and other depreciated currency, and that defendant, as soon as it could be obtained in pursuance of the agreement, got and presented to the plaintiff, Confederate bonds or currency, which he refused and still refuses to take.

Treated as a plea of accord and satisfaction, it is imperfect. Whilst it avers the accord it does not show satisfaction. An accord to constitute a bar must be full, perfect and complete. Peytoe's case, 9 Reports, 79; Lynn v. Bruce, 2 H. Bl., 317; Balston v. Baxter, Croke Eliz., 304. If accord is relied on, it must be executed. 3 Black. Com., 15. Chief Justice Eyre in Lynn v. Bruce, said: "Accord, executed, is satisfaction; accord, executory, is only substituting one cause of action in the room of another, which might go on to any extent." In Allen v. Harris, 1 Ld. Ray., 122, the judge declared the "contrary doctrine would overthrow all the books." Also, 1 Bacon Abr., 58; Russell v. Lyles, 6 Wend. R., 391; Clark v. Dinsmore, 5 N. H., 139.

Nor is the plea sufficient as a tender. The allegation that "the defendant had the same in readiness and presentation for payment," etc., is not enough. If the thing is capable of being brought into court as specie, bank notes, etc., the plea must be accompanied with the thing originally tendered. To complete the transaction, the tender must be made, and the party must be *semper paratus* to pay if called on, and must repeat the tender with his plea.

3d. Nor is the plea of coverture a bar to the action. The contracts set out in the second, third and fourth counts of the declaration are such, as a wife who has a separate estate can make.

4th. There was no error in not applying the demurrer to the declaration. The argument addressed to us could have no effect except, perhaps, as to to the first count. But there were three good counts, and the rule is, if there be a demurrer to the entire declaration, and one count be good, the demurrer is not well taken.

5th. The instructions granted at the instance of the plaintiff, clearly inform the jury what contracts a wife, having

a separate estate, may make, so as to be obligatory on her and her property, and conclude with the direction that the jury must look to all the facts in evidence, to determine to whom the credit was given, and to whom the plaintiff looked for payment.

For Mrs. Guion, the court charged the jury, to the effect that if Mr. Guion bought the goods on his own credit, and gave his individual note for them, then they must find for her, although part or all the goods were for her benefit, her children, and property; the jury must be satisfied that the credit was originally given to the wife, and that the plaintiff treated with, and looked to her for payment. The wife is not liable for necessaries, unless she expressly contracted for and consented thereto, or gave her express consent to be charged therewith, and the credit was given to her at the time. The duty of the husband is to provide for the support of his family, and the wife is not bound, unless she contracted for the same on her own credit, and with her consent was charged therewith, at the time. The jury are the sole judges whether the credit was given to the husband or the wife.

Thirty-odd instructions were proposed for Mrs. Guion, nearly all of them granted in the words selected by counsel. The central idea in most of them was, to whom was the credit given? To the husband or the wife? The purpose of the charges of the court is to *instruct* the jury in the law applicable to the case. Whether this can be done better by presenting the same, or nearly the same ideas, in various forms of language, is exceedingly doubtful. It might tend to embarrass and confuse the minds of non-professional men, as are jurors, rather than convey to them a clear comprehension of the rules of law to be applied to the facts proved. The jury could hardly have failed to see that the point of the defense was, that although Mrs. Guion owned separate property, yet, if the goods taken up, were family supplies, or for the use of her property, she was not responsible, unless they were bought with her consent, and on her credit.

6. The only remaining question is, does the testimony prove

or tend to prove that the goods were for the use of the wife's plantation, and of herself and family, and were they sold on her credit. In reviewing the verdict of the jury, according to repeated decisions of this court, we will not consider the testimony with the view of determining whether our judgment would concur with the jury, but only to see whether there was sufficient evidence fairly to support the verdict. If there be conflict between the witnesses, the jury were in more favorable circumstances to elicit the truth than this court. The testimony was that the wife owned a plantation, used in the cultivation of cotton; that the plaintiffs were the merchants by whom the business was done, the husband being the active manager. The business was continued through several years, the crops of cotton being delivered to the plaintiffs, and the proceeds applied as credits on the accounts.

P. W. Doherty, plaintiff, describes the transactions thus: John O. Guion had no property, and was engaged in no business from which he realized an income. The goods sold to him were solely on the credit of his wife's separate property. The husband owned nothing. From the beginning of the business, the accounts made by Guion were paid and settled by his wife's cotton, sent to plaintiffs for sale or shipment, and the proceeds placed to credit of the accounts. The purchase of supplies, and the shipment and sale of Mrs. Guion's cotton was done through the husband. Neither husband nor wife ever complained of this mode of doing the business. Plaintiff kept accounts with the husbands of a great many wives, who had separate estates, just as the accounts were kept with Mr. Guion. In all such cases the credit was given on the faith of the wife's property. Plaintiffs knew that Guion had no property; the credit was given on account of the wife and her property; no credit could have been given to the husband; in payment of taxes on wife's property, the receipts were taken in name of the husband.

John O. Guion, defendant, deposed that he supposed credit was given to himself; never mentioned anything about wife's

separate property; never told plaintiffs he was agent for his wife; his wife never formally made purchases, nor gave any orders; she never authorized witness to buy anything on credit; he bought all supplies on his credit, and paid for them out of proceeds of wife's crops; owned no land; had when married, carriage and horses and some money, etc.; never owned any other property after the marriage; had no other business than to attend to his wife's plantation; shipped her cotton, and drew drafts in his name—all this was done with her knowledge and consent, etc.

Aside from the other testimony, a jury might well conclude from this witness' statement, that he had his wife's consent to buy on credit and pay with her means. It would not be a strained inference that he was recognized by the wife, as her agent to buy supplies for the plantation and family on a credit, and apply the crops in payment. He deposes that such was his practice, with the knowledge and consent of his wife. We have referred to thus much of the evidence to show that the jury were justified in coming to the conclusion that they reached, and that we would transcend the boundary which divides the duties of judges and juries, if we should interfere with this verdict on the ground of being against the great preponderance of the testimony. It is claimed that the acceptance by the plaintiff of the promissory note of Jno. O. Guion, was a merger of the open accounts into a security of higher dignity, and therefore, if Mrs. Guion was originally liable, she has thereby been discharged. In the case of Peter v. Bercely, 10 Peters' Rep., 567, the executors of Peter, gave notes to the bank, in lieu of, or renewal of the debt of their testator. It was contended that thereby the debt due from the estate of the testator, was extinguished. Not so, held the court, unless the creditor accepted the notes in satisfaction of the original debt, and looked alone to the makers of the notes for payment.

In James v. Hackly, 16 Johnson's Rep., 277, Spencer, Ch. J., for the court, said, " the acceptance of a negotiable note for

an antecedent debt, will not extinguish such debt, unless it is expressly agreed that it is accepted as payment."

In Glenn v. Smith, 2 Gill. & Johns., 508, one John Heslip received the notes of Ann Haslett for a debt against the estate of Wm. Haslett, deceased, and surrendered an account receipted. In the absence of all evidence, except the receipt written at the bottom of the account, it was said by the court to be clear that the note of Ann Haslett did not extinguish the claim against the estate. The general rule is stated to be, " that the acceptance of a security of equal dignity, is, of itself, no extinguishment of the antecedent debt."

The acceptance, by a creditor, of the promissory note of his debtor, for an antecedent simple contract debt, does not extinguish the original debt (for both are of equal decree in legal contemplation), if it remains in the hands of the creditor, unpaid, and he can produce it to be canceled, or show that it is lost. There are cases which hold the rule to be the same, if the note of a third person is taken, unless the creditor parts with it, or is chargeable with some *laches* with respect to it. 5 Term Rep., 513; Pinckford v. Maxwell, 6 Term Rep., 52; Bishop v. Rowe, 3 Malel & Searl, 362.

If, however, there be an agreement by the creditor to receive it absolutely as payment, and to incur the risk of its being paid; the note, either of the debtor or of a stranger, operates as an extinguishment or satisfaction of the precedent debt. 7 Term R., 60; Toby v. Barbee, 5 Johns., 68; John v. Weed, 9 Johns., 310. In the case of Glenn v. Smith, in Gill. & Johns., the expression, " In payment of the above account," was held not to be sufficient evidence of an absolute discharge of the original debt. In the case cited from 6 Term R., 52, Lord Kenyon said: " If the bill which is given in payment does not turn out to be productive, and is not what the creditor expects it to be, it may be considered as if no such bill had been given." It is claimed in argument that the decisions of our predecessors, in the case of Slocumb, admr., v. Holme, admr., 1 How.,

144, and Mayes v. Oglesby, 6 How., 50, declare a contrary doctrine. The latter case has no application; for in that case a bond was executed for the parol debt; and it was, therefore, the case of the merger of an inferior into a higher security, which extinguished the former. Nor does the former case, considered and construed by the facts before the court, militate against the current of authority from Westminster Hall and elsewhere. "The plaintiff declared on a promissory note, and also work and labor done, and goods sold and delivered. Among other matters, the defendant pleaded that the account filed was closed by the note declared on in the first count in plaintiff's declaration." The controversy was, whether the note was given for *the account*—the plaintiff insisting that the note had no connection with the account, but rested on a different consideration. In this aspect of facts, the circuit court charged the jury that if the note was given for the account, then the plaintiff could not recover on the account, which instruction was sustained as correct.

The case of Taylor & Myers v. Conner, 41 Miss. R., 728, holds that neither the note of the debtor nor that of a stranger will be a payment of the antecedent liability, unless accepted as such.

Objection was made to the reading of the note of Guion to the jury. The note of John O. Guion created no liability on his wife, and could not be evidence of any. The first count does not disclose a good cause of action against the wife. But the presence of the note on the trial, and before the jury, was proper enough as an element in the cause. Whether this paper was in absolute satisfaction for the goods sold and delivered, it was a fact in the cause—part of the *res gestæ* of the pleadings between the parties, tending to help the elucidation of the proposition, whether the goods were supplied on the sole credit and responsibility of the husband, or on the faith of the wife's property and her credit.

The suggestion was made at the bar, by the counsel for the plaintiff in error, that there were features in this case mate-

rially distinguishing it from others in this court, which dismissed the liabilities of married women, and we were invited to a very careful consideration of it. We have maturely examined the record, and arguments of counsel, and are well satisfied that justice has been done, and that no error has been committed to the prejudice of the complaining party, which would warrant this court in setting aside the verdict and judgment of the circuit court.

Let the judgment be affirmed.