PORTER & MACRAE v. M. A. STATEN.

1. HUSBAND AND WIFE.   *Liability of latter for debts of former.   Account for plantation and family supplies.   Section 1177, Code of 1880, construed and applied. Case in judgment.*

S. and his wife resided on her plantation, which he cultivated.  All of the personal property used in such cultivation belonged to S.   P., a merchant, dealt with S., in ignorance of the fact that the farm belonged to the wife, furnished S. with farm supplies, and advanced money to him and to his wife on his account.   S. would ship cotton from the farm to P., who would credit the proceeds on S.'s account.   No contract between S. and his wife in relation to the business of the plantation was on file, as contemplated by § 1177, Code 1880.   S. having died, P. brought an action against the wife for the balance due on the account of S.   Section 1177, Code of 1880, provides that "it shall not be lawful for the husband to rent the wife's plantation, houses, horses, mules, wagons, carts, or other implements, and with them or any of her means to operate and carry on business in his own name or on his own account, but all the business done with the means of the wife by the husband shall be held to be on her account and for her use, and by her husband as her agent and manager in business, as to all persons dealing with him without notice, unless the contract between the husband and wife which changes this relation shall be evidenced by writing, subscribed by them, duly acknowledged, and filed with the chancery clerk of the county where such business may be done, to be recorded as other instruments are recorded therein."   *Held,* that the wife is, under the above-quoted statute, liable as an undisclosed principal, but her liability is limited to debts contracted in and for the purpose of carrying on the business in which her means (the plantation) were used, to wit, the planting operations, and this rule excludes supplies furnished for the support of S.'s family.

2. SAME.   *Account against wife for plantation supplies.   Credits to which she is entitled.*

And in the case above stated the wife is entitled to have credited against the part of the account for which she is liable the proceeds of the cotton received by P. from her plantation.

3. SAME.   *Account for plantation supplies.   Burden of proof.*

In the case above stated the burden of proof is on P., the plaintiff, to show that his claim is for those things for which the wife is liable.

APPEAL from the Circuit Court of De Soto County.

HON. A. T. ROANE, Judge.

The case is stated in the opinion of the court.

*White & Witherspoon,* for the appellant.

In this case Dr. Staten was in 1882 and 1884, when these debts were made, in the possession of the land and using it, making crops on it for himself, and it was by every one, particularly plaintiffs, supposed to be his. There was no written contract between him and his wife of record in regard to the terms under which he was operating it. She had inherited the land, hence had no deed or title of record. In a case like that he was, since Code of 1880, the agent of his wife in all he did about it.

This record presents a flagrant example of the very evil that the § 1177 of the Code of 1880 was intended to cure. If such transactions can be upheld, § 1177 was enacted in vain.

*D. McKenzie,* for the appellees.

Under the laws of Mississippi prior to 1880, the husband was the statutory agent for the wife, and she was bound for all supplies purchased by him for her plantation—with or without her consent—but even under that law she was never bound for money obtained by the husband or for family supplies, unless they were bought on her credit with her consent. 56 Miss. 1. The fact that she owned separate property did not render her liable for family supplies unless she consents to assume it. 43 Miss. 530, 551 ; 54 Miss. 368, 374-5-6 ; 57 Miss. 123. Under those laws, if the husband purchased plantation supplies on his own credit and not as agent for his wife, she is not liable. 57 Miss. 123, 125-6-7-8.

Unless the court should hold that under §§ 1176-7 of the Code of 1880 the husband of a married woman who owns land is stripped of his individuality and constituted a statutory agent for his wife, incapable of farming on his own account, or of buying any kind of supplies except as an agent, and that whether his wife consents to his agency or not, Mrs. Staten is not liable for the debts sued on in this case.

The proof in this case shows that Mrs. M. A. Staten permitted her husband, J. A. Staten, to use her land for the support of the family, as is permissible under § 1176, Code 1880. He was not her tenant in the sense prohibited by § 1177 of the Code of 1880. He, by her consent, used the land as his own for support

of his family.    And when he died she worked it on her own account for support of herself and infant son, as the duty of self-support then devolved on her.

The law given to the jury for defendant was right, as was the modifications of plaintiffs' charges made by the court below, and the refusal to give one charge asked by plaintiffs was right.

COOPER, C. J., delivered the opinion of the court.

'The defendant was the owner of a certain plantation, on which she and her husband resided.    The husband was the owner of all the personal property situated on the place, and with it he cultivated the farm in his own name and used and disposed of the crops grown thereon as his own.    He contracted a debt with the appellants and died, owing a considerable balance, to recover which this suit is brought against the wife.    It appears by the evidence that the appellee's husband, Dr. Staten, was a practicing physician, but the principal business to which he devoted his attention was the cultivation of her farm.    The account sued on consists principally of items of supplies such as are usually considered as plantation or family supplies, sums of money advanced to the husband and wife, all of which were charged against the husband, and some charges for money paid out by the appellants in the payment for medicines purchased by the husband from other merchants.    It appears by the evidence that the appellants dealt with the husband in ignorance of the fact that the farm was owned by the wife, giving him credit on the faith of his usual prompt payment of his accounts, which he had year after year paid by the shipments of the crops of cotton grown on the wife's farm.

On the trial in the court below the jury was instructed that the plaintiffs were entitled to recover if they had extended the credit to the wife or to the husband acting as her agent; that the wife was not liable for family supplies and only for such plantation supplies as were actually used on the farm ; that if the husband farmed with his own team on his wife's land, received and controlled the crops raised as his own, and was a physician in large practice, the presumption of law would be that the accounts were

made on his own credit, and that the burden of proof was on the plaintiffs to show that the credit was given to him as the agent of the wife with her knowledge and consent. Several other instructions were given, but the substance of those as stated above indicate upon what theory the case proceeded.

The decision of the questions involved rest upon a construction of § 1177 of the Code of 1880, which is as follows: " It shall not be lawful for the husband to rent the wife's plantation, houses, horses, mules, wagons, carts, or other implements, and with them, or any of her means, to operate and carry on business in his own name or on his own account, but all the business done with the means of the wife by the husband shall be held to be on her account and for her use and by her husband as her agent and manager in business, as to all persons dealing with him without notice, unless the contract between the husband and wife which changes this relation shall be evidenced by writing, subscribed by them, duly acknowledged, and filed with the chancery clerk of the county where such business may be done, to be recorded as other instruments are recorded therein."

The evil intended to be remedied by this section of the code was one which was becoming of frequent recurrence as shown by the results of litigation in this State. Husbands of the owners of separate estates would devote their attention to the business carried on with the property of the wife, but if the business proved to be unprofitable the wife would escape liability for debts contracted in the business by the easy device of setting up a secret arrangement or contract, by the terms of which it would be shown that the property had been leased or hired to the husband and the business transacted as his own and for his exclusive benefit. In such cases judgments against the husband would be fruitless, and creditors who had dealt in good faith with him, believing him to have been the agent of the wife, were defrauded by finding the property to be in one person, and the risks incident to the business to which it had been devoted shifted to an insolvent by bed-chamber arrangements, which, whether real or simulated, it was impossible to disprove. Ordinarily, the statute will find operation in that

class of cases which called it into existence, viz.: cases in which credit has been extended to the husband as agent of the wife; but the case now presented requires a decision upon a wholly different state of facts, and the inquiry is, whether one who has dealt with the husband in ignorance of the wife's title to the property used, but believing him to be the owner, can charge the wife as an undisclosed principal.

The facts in this case are clear and undisputed. By an arrangement between the husband and wife, not recorded as required by law, and unknown to the creditor, the husband, who was the owner of all the personal property used in the cultivation of crops, carried on the business of farming upon the wife's land in his own name and for his own exclusive benefit; the plaintiffs extended credit to him individually, and not as the representative of the wife, believing him to be, as under the contract with his wife he was, the owner of the crops on the land, but also believing him to be, as he was not, the owner of the farm.

Three questions are presented:

1. Is the wife liable for the debts contracted by the husband?

2. If this be resolved in the affirmative, to what extent does her responsibility extend?

3. On whom rests the burden of proof to show whether the goods bought were bought for the wife, or that she obtained the benefit of them?

The first inquiry we answer affirmatively. The statute by its own power, without the assent of the wife, and, it may be, against her consent, declares that, unless by written, acknowledged, and recorded contract between husband and wife that relationship be changed, the husband, transacting business with the means of the wife, as to all persons dealing with him without notice, shall be treated and held as her agent and manager in business. The "notice" meant by the statute is notice of that "contract by which the relationship is changed," and the record of which is provided to be made "in the county where such business may be done." It is immaterial that the wife's title to the property used in the business appears by the record of her deed; that is a matter

foreign to the subject of this legislation. The property-right of the wife, which is disclosed by such a record, is the foundation of the right of the creditor to charge her with the payment of his debt; he claims according to the notice given by such record, and not against it. Nor is it sufficient that the creditor believed the husband to be engaged in business for himself, and that in fact he was so engaged, unless it appears that such belief arose from a knowledge of facts sufficient to charge the creditor with notice of the contract between husband and wife, or to devolve on him the duty of prosecuting inquiry to learn the truth. By fair and necessary implication the statute secures to creditors the right to hold the wife to answer for all debts contracted in a business conducted by her husband with her means in all cases in which there is not a recorded contract or notice to the creditor. If the credit is given to the husband as her agent, she is chargeable as a known principal; if it be extended to the husband in ignorance of the facts, she is liable on discovery as an undisclosed principal.

We appreciate the difficulty which must arise when a case shall be presented calling for that investigation, in determining what proportion of the means of the wife must be invested in the business to fix upon her responsibility for the debts contracted. It is only necessary now to say that such liability exists where she is the owner of the farm upon which the crops are grown, although the husband, who conducts the business, either in her name or his own, is the sole owner of all the teams and implements used in its cultivation. But the common-law obligation of the husband to provide supplies for his family is not changed or modified by the statute, which has relation only to the debts contracted in the business in which the wife's property is employed; nor is the wife's estate to be subjected to the payment of debts contracted by the husband for family supplies, on the ground that he, by devoting himself to her affairs, disables himself from making provision for the support of the family. *Caldwell* v. *Hart,* 57. Miss. 123.

Where the husband is dealt with as the agent of the wife, and the goods sold are such as fall within the scope of his apparent power to purchase, the creditor selling to him in good faith as

agent could not be cut off from recourse against the wife by reason of the appropriation of the goods bought for the support of the family; but this is not because the wife is under obligation to support the family, but because the creditor has no interest in seeing to the proper application of the goods to the business of the principal; that is a matter to be settled between the principal and the agent, and the rights of the creditor are not to be affected by any subsequent misappropriation by the agent either to his own use or to that of a third person. But a different rule must apply where, as in this case, the credit is extended to the husband as an individual and not as an agent. One who appoints an agent to represent him in his affairs (and it is the same if the agency be established by law) is bound by the acts of that agent acting as such and within the scope of his agency. But where credit is given to the agent, and afterward the creditor discovers the existence of an undisclosed principal and seeks to charge him, it is incumbent upon him to prove that the contract was in fact in behalf of that principal and for his use. It is not sufficient to show that it is a contract which the agent might have made. The true inquiry is whether it is the act of the agent as agent, or of the person who is agent acting for himself. The facts of this case illustrate most clearly the principle involved. Here the agent, acting and intending to act for himself, dealing with a seller intending to give him personally credit for the goods, bought goods equally appropriate to the business of his principal and to his own use. It is now sought to fix liability on the wife, because if the agent had professed to act for her she would have been bound for the payment of all the goods bought. To permit this to be done, where it is only shown that the purchase was within the scope of the agency but not according to nor in execution of his power as agent, would be to extend the responsibility of the principal beyond any length to which it has been carried by any decision known to us and beyond any imaginable necessity. *Caldwell* v. *Hart*, 57 Miss. 123.

We think the defendant is responsible as an undisclosed principal for those items on the account, and those only, bought for the use and benefit of the business transacted with her property, and

that the burden of proof is upon the plaintiffs to show what items fall within that class.

The plaintiff's position being that the crops grown were under the statute grown by the husband, acting for his wife, it results that if she is chargeable with the debts she must be held to be the owner of the cotton which plaintiffs have received, and the proceeds of such crops must be applied to the discharge of those items which may be shown to be charges against her.

These views sufficiently indicate the errors committed in the trial in the court below.

*The judgment is reversed and cause remanded.*